## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | )  No. 1:17-CR-00047 |
| v. | ) |
| | )  The Honorable Liam O'Grady |
| DARRICK MATTHEW SELLERS, | ) |
| | )  Sentencing: October 20, 2017 |
| *Defendant.* | ) |
| | ) |

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

Sometime on or before May 1, 2015, Defendant Darrick Matthew Sellers downloaded peer-to-peer software to two computers at his residence in Arlington, Virginia. He then used an internet connection and one of these computers to download images of children being sexually exploited and abused. By the time he was apprehended by law enforcement, the defendant had collected approximately 24 videos of child pornography. Among the images depicted in the videos that the defendant chose to download were the sexual abuse of prepubescent girls. Moreover, as the defendant has admitted, some of the images within these sexually exploitive videos depicted sadistic or masochistic imagery.

The defendant has pled guilty pursuant to a plea agreement to one count of receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1), which carries a mandatory minimum of 60 months of imprisonment. As part of the plea agreement, the government has stipulated that the defendant's Guidelines Range is appropriately calculated at 97 to 121 months. Given the nature and circumstances of the defendant's crime, his history and characteristics, and the need for the sentence imposed to reflect the seriousness of the offense, the government submits that a sentence at the low-end of the Guidelines range is sufficient but not greater than

necessary to account for the sentencing factors in 18 U.S.C. § 3553.   The government further

requests that the Court order a significant term of supervised release; impose a $100 special

assessment;[1] and require the defendant to pay restitution (to the extent any victims request

restitution).   The government will try to reach an agreed-upon restitution amount with the

defendant and the attorneys for the victims seeking restitution, but, in the event no agreement can

be reached, the government submits an analysis in Part III to serve as "guideposts for

determining an amount that fits the offense."   *Paroline v. United States*, 134 S. Ct. 1710, 1728

(2014).

## BACKGROUND

On April 19, 2017, the defendant entered a timely plea of guilty to a one count criminal

information charging him with receipt of child pornography, in violation of § 2252(a)(2) and

(b)(1).   The defendant has stipulated to having engaged in the conduct described in the

Statement of Facts filed in this matter.   (*See* Statement of Facts, Dkt. 8.)   In summary, the

defendant admitted to receiving approximately 24 videos of child pornography, some of which

contain images that depict the sexual abuse of prepubescent children as well as images that

portray sadistic or masochistic conduct.

## SENTENCING ANALYSIS

The Court must consult both the U.S. Sentencing Guidelines and the sentencing factors

set forth in 18 U.S.C. § 3553(a) to determine the appropriate sentence for the defendant's crime

of knowing receipt of child pornography.   Although the Sentencing Guidelines are advisory,

---

[1]   The mandatory $5,000 special assessment required by Justice for Victims of Trafficking Act of 2015 is inapplicable here because the defendant's conduct began before the enactment of that statute.   *See* 18 U.S.C. § 3014(a).

district courts are required to "consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). As the Fourth Circuit has explained, district courts are to "first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005) (citation omitted)

## I.     The Applicable Sentencing Guidelines

The government and the defendant have agreed that the following offense-level adjustments apply in this case:

| Guideline | |
|---|---|
| Base offense level (Section 2G2.2(a)(2)) | 22 |
| Conduct limited to receipt of child pornography and defendant did not intend to traffic in or distribute such material (Section 2G2.2(b)(1)) | -2 |
| Material involved a prepubescent minor or a minor who was younger than 12 years old (Section 2G2.2(b)(2)) | +2 |
| Offense involved material that portrays sadistic or masochistic conduct (Section 2G2.2(b)(4)) | +4 |
| Offense involved the use of a computer for the receipt of the material (Section 2G2.2(b)(6)) | +2 |
| Offense involved 600 or more images (Section 2G2.2(b)(7)(D)) | +5 |
| Acceptance of responsibility (Section 3E1.1) | -3 |
| **TOTAL OFFENSE LEVEL** | **30** |

(PSR ¶¶ 26–39.) In addition to the two-point downward adjustment to defendant's offense level for acceptance of responsibility under U.S.S.G. § 3E1.1(a), the government now moves for the additional one-point decrease to defendant's offense level under § 3E1.1(b). As reflected in the

chart above, the government and defendant agree that defendant's adjusted offense level is 30.

The defendant is in Criminal History Category I (PSR ¶ 44), resulting in a stipulated Guidelines

range of 97-121 months, (PSR at 15).

To the extent the defendant criticizes the Guidelines' offense-level adjustments for child

exploitation crimes, the government notes that the U.S. Sentencing Commission has repeatedly

declined to amend those adjustments to which the parties have agreed.   Most recently, in May

2016, the Commission submitted proposed Guidelines amendments to Congress that included

proposed changes to § 2G2.2.   *See* Amendments to the Sentencing Guidelines (Apr. 28, 2016),

*available at* http://www.ussc.gov/guidelines/amendments/reader-friendly-version-amendments-

effective-november-1-2016.[2]   Despite recommending changes to other specific offense

characteristics under § 2G2.2, the Commission opted to leave intact each of the adjustments that

apply to the defendant.   In other words, after a thorough review of the Guidelines, the

Commission determined in its expertise that the § 2G2.2 adjustments applicable to the defendant

are sufficiently supported that they should remain unchanged.   The Court should therefore give

them the same weight and consideration it has historically accorded them.

## II.        The Section 3553 Factors

In determining the defendant's sentence, the Court also must consider the factors set forth

in 18 U.S.C. § 3553.   These factors include the nature and circumstances of the offense; the

history and characteristics of the defendant; the need for the sentence imposed to reflect the

seriousness of the offense, to promote respect for the law, and to provide just punishment for the

offense; and the need to avoid unwarranted sentence disparities among defendants with similar

---

[2]  The Guidelines amendments became effective on November 1, 2016.

records who have been found guilty of similar conduct.   *Id.*

It is beyond dispute that child pornography trafficking crimes like the defendant's are grievous offenses that deserve serious sanctions.   *See United States v. Morace*, 594 F.3d 340, 350 (4th Cir. 2010) (citing a legislative enactment in 2003 as "ample evidence of Congress's intent that offenses involving child pornography be treated severely" (internal quotations and citation omitted)).   Such crimes inherently involve the sexual abuse and exploitation of children. Indeed, far from being victimless, child pornography trafficking crimes result in perpetual harm to the victim:   "[i]t is well established that children featured in child pornography are harmed by the continuing dissemination and possession of that pornography" given that "[s]uch images are 'a permanent record of the children's participation and the harm to the child is exacerbated by their circulation.'"   *United States v. Burgess*, 684 F.3d 445, 459 (4th Cir. 2012) (quoting *New York v. Ferber*, 458 U.S. 747, 759 (1982)).

The statement submitted by the parents of "Violet" illustrates the harms caused by the defendant's crimes.   As Violet's parents write, Violet "will forever have the stigma and branding of being someone's sexual object of pleasure."   (*See* Victim Impact Statement for "Violet" at 1.[3])   They add that Violet effectively has received a "life" sentence of victimization; that is, she will grow up knowing that "people all over the world can view" her sexual abuse and that there is nothing that can be done to prevent the further distribution of such "horrid videos." (*Id.* at 1–2)   As a result, Violet's parents reason that "[e]ach person who possesses or shares the pictures and videos of [Violet's] abuse" should receive "the most severe punishment allowed by the courts" and "should be made to contribute to the costs of her" victimization.   (*Id.* at 2–3.)

---

[3]  It is the understanding of the government that the U.S. Probation Office will provide a copy of this victim impact statement to the Court.

With respect to the defendant's characteristics, the government recognizes that the defendant has taken responsibility for his conduct.   He entered a pre-complaint and pre-indictment guilty plea.   And, as reflected in the Statement of Facts, the defendant has admitted to downloading videos of child pornography.   (PSR ¶¶ 1 & 23–24.)   Moreover, materials provided by defense counsel indicate that in May 2015, the same month in which the FBI executed a search warrant on the defendant's residence, the defendant began seeking sex offender treatment.

While it is commendable that the defendant has made efforts to address his criminal conduct, claims of rehabilitation do not warrant a sentence outside of the correctly calculated Guidelines.   Although the Fourth Circuit has not yet addressed the propriety of downward variances in child pornography cases, it has observed that lenient sentences in child pornography cases run counter to Congress's intent in enacting legislation criminalizing the exploitation of children.   *See Morace*, 594 F.3d at 350.   Accordingly, the Fourth Circuit has reasoned that sentencing courts should craft sentences that "give respectful attention to Congress' view that [child pornography crimes] are serious offenses deserving serious sanctions."   *Id.* (internal quotations and citation omitted).

In accounting for a defendant's treatment efforts in the course of devising an appropriate sentence, it also is important to note that the degree of effectiveness of sex offender treatment for adults is unknown despite numerous studies conducted on the effect of such treatment.   As one psychologist has explained, "No definitive conclusions can be drawn from individual studies about the effectiveness of treatment.   About half suggest treatment may be effective in reducing recidivism and about half suggest that treatment is statistically ineffective."   Stephen Brake, Ph.D., *The Effectiveness of Treatment for Adult Sex Offenders*, March 2010 at 1, *available at*

www.stephenbrakeassociates.com. Moreover, "[t]he methodologies of many of the individual studies have been questioned making it even more difficult to reach definitive conclusions." *Id.* at 2. Indeed, even the Association for the Treatment of Sexual Abusers ("ATSA"), an international, multi-disciplinary organization that, among other things, sets practice standards and issues practice guidelines for the treatment for sex offenders, has opined that "not every individual will respond to treatment in the same way and some will benefit more than others." ATSA, "Eight Things Everyone Should Know About Sexual Abuse & Sexual Offending," June 23, 2014, *available at* http://www.atsa.com/pdfs/Policy/ 8ThingsEveryoneShouldKnow.pdf.

The government therefore submits that the Court should not impose a sentence outside of the Guidelines merely on account of that the defendant has sought treatment. This is so for at least two reasons. One is that a significant sentence of incarceration is not necessarily an impediment to treatment. As noted on the Bureau of Prisons' website, it is possible for the defendant to receive treatment while incarcerated. *See* Bureau of Prisons, "Sex Offenders," *available at* https://www.bop.gov/ inmates/custody_and_care/ sex_offenders.jsp.

The other reason is that a Guidelines-compliant sentence is necessary in order to deter the defendant and the community-at-large from engaging in this conduct. As courts have recognized, child pornography trafficking crimes fuel a market for child sexual abuse. *See, e.g.*, *United States v. Regan*, 627 F.3d 1348, 1355 (10th Cir. 2010) ("Because child pornography promotes the victimization of children, individuals like [the defendant] create a demand for its further production and abuse of children, even if their conduct is purely voyeuristic."). Here, the defendant was an active participant in the child pornography market, in the course of which he downloaded many videos of victims being sexually exploited and abused. And, through his participation in this market, the defendant helped validate and normalize the sexual exploitation

of children.   The Court thus should impose terms of incarceration and supervised release that reflect the need to deter others like the defendant whose desire to view child pornography outweighs concern about possible consequences.

To the extent defense counsel argues that the foregoing concerns are mitigated by the fact that the defendant is a low risk for recidivism, the government notes that it is difficult to accurately assess such risk.   Consider for instance the Dr. Ronald M. Biggio's evaluation of the defendant, which defense counsel has provided to the government and has indicated will be submitted to the Court.   Dr. Biggio's report concludes that the defendant is a low risk for engaging in a future sexual offense due to a lack of evidence that the defendant has had a prior hands-on sexual offense against a child.   The weight to be accorded to this evaluation, however, is unclear.   It appears that Dr. Biggio's conclusion is based on the fact that the defendant neither has been previously arrested or convicted of a hand-on offense nor has self-reported such conduct.   Yet, as the Sentencing Commission noted in a recent study on child pornography, sex offense research "demonstrates that a very large percentage of child sex abuse is unreported," and, "[a]s such, . . . that some child pornography offenders have committed officially undetected contact offenses[,] is not controversial.'"   (U.S. Sentencing Commission, Federal Child Pornography Offenses, Dec. 2012 at 173, *available at* https://www.ussc.gov/sites/default/files /pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf.   This observation is intuitive; sex offenses are crimes of secrecy and shame, and thus are underreported.   Although there is no study or figure that can adequately pinpoint the scope of this plague on our society, one aspect of child pornography crimes is clear: these crimes are inextricably intertwined with the sexual assault of children.

Even if the Court were to conclude that the defendant is a low risk for recidivism, a significant sentence is still appropriate here.   As the Supreme Court has noted, the most efficient method of combating the production of child pornography is to penalize its distribution and possession.  *See Osborne v. Ohio*, 495 U.S. 103, 109–10 (1990); *Ferber*, 458 U.S. at 760 (1982). The child pornography trafficking laws were not conceived as a method to punish contact offenders; instead, they were designed to stop the abuse of children by eliminating the market for such images.   The government therefore is seeking a significant sentence for the defendant, not to punish him as a surrogate for child molesters, but rather to address conduct that perpetuates the sexual abuse of children.

## III.    Restitution

To date, the government is aware of one victim who has submitted a restitution claim in this case.   (PSR ¶ 19.)   In addition to being agreed upon by the parties (*see id.* at ¶ 2(c)), restitution is required in this case because defendant's actions caused cognizable damages under federal law.[4]   In particular, the defendant is required under 18 U.S.C. § 2259 to contribute to the "general losses" caused to his victims by the continued traffic in their sexual abuse images, "in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses."   *Paroline*, 134 S. Ct. at 1727 (holding that defendants in child pornography crimes are liable for their own conduct in restitution to victims under § 2259).

The government and the victim's attorney will attempt to reach an agreement with the

---

[4]  Section 2259 of Title 18 of the U.S. Code provides for mandatory restitution for victims of certain child exploitation offenses, including the defendant's crimes.   Restitution is required for the "full amount of the victim's losses," including "(A) medical services relating to physical, psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) attorneys' fees, as well as other costs incurred; and (F) any other losses suffered by the victim as a proximate result of the offense."   *Id.* § 2259(b)(3).

defendant about the restitution to be ordered in this case. In the event the parties are unable to reach such an agreement, the government provides the following analysis to serve as "guideposts for determining an amount that fits the offense," *id.* at 1728, and requests additional time if necessary—and as agreed to in the plea agreement—to finalize restitution.

In this case, Violet, who is one of the victims depicted in the At School series, has requested $10,000 in restitution. The attorney who represents Violet also has requested attorney's fees under 18 U.S.C. § 2259(b)(3)(E) in the amount of $1,500.

In determining the appropriate restitution amounts, the Court may consider (1) the number of past criminal defendants found to have contributed to the victim's general losses; (2) reasonable predictions of the number of future defendants; (3) any available and reasonably reliable estimate of the broader number of offenders; (4) whether the defendant distributed the images; (5) whether he contributed to their original production; (6) how many images he possessed; and (7) "other facts relevant to the defendant's relative causal role." *Paroline*, 134 S. Ct. at 1728. The district court also may consider the amount of "restitution sought and ordered in other cases." *Id.* at 1729.

In this case, a report from the National Center for Missing & Exploited Children indicates that the defendant downloaded and possessed one video file from the At School series.[5] As demonstrated by the information provided by Violet's attorney, the continued trafficking in images of Violet's sexual abuse has caused her an outstanding loss of $133,444.04. It should be

---

[5] This video file was found in a folder on the defendant's HP laptop computer with the following root file path: "/Users/Darrick/Incomplete/Preview-T-47134142-(~pthc center~)(opva)(2014) Cumming on 11yo perfect ass MVI_1857.avi." It appears from a review of this file, which is approximately 12 seconds in length, that it depicts an adult male masturbating (only the adult male's penis and one of his hands are shown) near the anus and vaginal area of what appears to be a nude prepubescent girl. The video ends before the adult male ejaculates.

noted that there is no indication that the defendant further distributed the video of Violet that was found on his computer, or that it was accessed by others.   In addition, the government does not have complete statistics on the number of past or future offenders either who were caught and convicted or who will be caught and convicted for crimes contributing to this victim's general losses.   Nor does the government have a reliable estimate of the broader number of offenders who will never be caught.

Data self-reported by Department of Justice attorneys indicates that between on or about April 7, 2016, and September 21, 2017, Violet received an average restitution award of $5,436. Although the undersigned attorney does not have any information regarding recent restitutions awards for Violent in the Eastern District of Virginia, the aforementioned self-reported data indicates that a district judge in the Western District of Virginia in April 2017 awarded $2,500 to Violent in *United States v. Spencer*, 1:15-CR-29.[6]

With the above data serving as "guideposts," the government requests restitution in a reasonable, not nominal, amount comporting with defendant's relative role in the causal process and in consideration of the requests made by Victim.

## CONCLUSION

For the reasons stated above, the government submits that a sentence at the low-end of the properly calculated Guidelines is sufficient but not greater than necessary to satisfy the sentencing factors in § 3553.   The government further recommends that the defendant's sentence include a mandatory assessment, a significant term of supervised release, and reasonable restitution (to the extent applicable).

---

[6] *See* ECF No. 149 (Oral Order Granting Mot. for Restitution); ECF No. 150 (Amended Judgment Order).

Respectfully submitted,


Dana J. Boente
United States Attorney


Date: October 13, 2017          _____/s/_____
                                Alexander P. Berrang
                                Assistant U.S. Attorney
                                Office of the United States Attorney
                                2100 Jamieson Avenue
                                Alexandria, Virginia 22314
                                Tel: (703) 299-3700
                                Email: Alexander.P.Berrang@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of October, 2017, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF system, which will send a notification of such filing

("NEF") to counsel of record in this case.

I also certify that I will send a true and correct copy of the foregoing by e-mail to the

following:

William C. Byerley
U.S. Probation Officer
10500 Battleview Pkwy, Suite 100
Manassas, Virginia 20109
William_Byerley@vaep.uscourts.gov


_____/s/_____
Alexander P. Berrang
Assistant U.S. Attorneys
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3700
Fax: (703) 299 3981
Email: Alexander.P.Berrang@usdoj.gov